IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION
5:10-CV-134-D

| | |
|---|---|
| DEBORAH FRANCES TUCKER, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | **MEMORANDUM AND** |
| ) | **RECOMMENDATION** |
| MICHAEL J. ASTRUE, ) | |
| Commissioner of Social Security, ) | |
| ) | |
| Defendant. ) | |

In this action, plaintiff Deborah Frances Tucker ("plaintiff") challenges the final decision of defendant Commissioner of Social Security ("Commissioner") denying her application for a period of disability and disability insurance benefits ("DIB") and supplemental security income ("SSI") on the grounds that she is not disabled.[1] The case is before the court on the respective parties' motions for judgment on the pleadings. (D.E. 34, 36). Plaintiff filed a memorandum in support of her motion (D.E. 35) and the Commissioner a memorandum in support of his motion (D.E. 37). The motions were referred to the undersigned Magistrate Judge for a memorandum and recommendation pursuant to 28 U.S.C. § 636(b)(1)(B). (*See* D.E. 38). For the reasons set forth below, it will be recommended that the Commissioner's motion be allowed, plaintiff's motion be denied, and the final decision of the Commissioner be affirmed.

---

[1] The statutes and regulations applicable to disability determinations for DIB and SSI are in most respects the same. The provisions relating to DIB are found in 42 U.S.C. subch. II, §§ 401, *et seq.* and 20 C.F.R. pt. 404, and those relating to SSI in 42 U.S.C. subch. XVI, §§ 1381, *et seq.* and 20 C.F.R. pt. 416.

# I. BACKGROUND

## A. Case History

Plaintiff filed an application for DIB on 1 March 2007 and protectively filed an application for SSI on 25 January 2007, alleging a disability onset date of 25 July 2006.[2] Transcript of Proceedings ("Tr." or "tr.") 10, 133-34, 154. She alleged disability based on bipolar disorder, carpel tunnel syndrome, back surgery, lupus, arthritis, hypertension, gastroesophageal reflux disease, irritable bowel syndrome, a nerve problem, depression, and headaches. Tr. 158. The applications were denied initially on 4 June 2007 (Tr. 62-63, 70) and on reconsideration on 5 October 2007 (Tr. 64-65),[3] and a request for a hearing was timely filed on 27 October 2007 (Tr. 10, 107).

On 10 July 2009, a hearing was held before an Administrative Law Judge ("ALJ"). Tr. 25-48. In a written decision dated 30 July 2009, the ALJ found that plaintiff was not disabled and therefore not entitled to DIB or SSI. Tr. 10-20. Plaintiff timely requested review by the Appeals Council. Tr. 5. The Appeals Council denied the request for review on 28 January 2010. Tr. 1. At that time, the decision of the ALJ became the final decision of the Commissioner. 20 C.F.R. §§ 404.981, 416.1481. Plaintiff commenced this proceeding for judicial review on 2 April 2010, pursuant to 42 U.S.C. § 405(g). (*See* Compl. (D.E. 7)). The parties subsequently filed their motions for judgment on the pleadings.

---

[2] On 15 January 2004, plaintiff filed claims for DIB and SSI alleging a disability onset date of 17 November 2003. Tr. 10, 53. These claims were denied in a decision by an ALJ issued on 24 July 2006. Tr. 10, 53-61. Plaintiff did not further appeal that decision and does not seek its reopening. Tr. 10.

[3] The ALJ cites as the dates of these denials 7 June 2007 and 8 October 2007, respectively, an immaterial discrepancy. *See* tr. 10.

2

### B. Standards for Disability

The Social Security Act ("Act") defines disability as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A); *see* 42 U.S.C. § 1382c(a)(3)(A); *Pass v. Chater*, 65 F.3d 1200, 1203 (4th Cir. 1995). "An individual shall be determined to be under a disability only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." 42 U.S.C. § 423(d)(2)(A); *see* 42 U.S.C. § 1382c(a)(3)(B). The Act defines a physical or mental impairment as "an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. §§ 423(d)(3), 1382c(a)(3)(D).

The disability regulations under the Act ("Regulations") provide a five-step analysis that the ALJ must follow when determining whether a claimant is disabled:

> (i) At the first step, we consider your work activity, if any. If you are doing substantial gainful activity, we will find that you are not disabled. . . .
>
> (ii) At the second step, we consider the medical severity of your impairment(s). If you do not have a severe medically determinable physical or mental impairment that meets the duration requirement in [§ 404.1509 for DIB and § 416.909 for SSI], or a combination of impairments that is severe and meets the duration requirement, we will find that you are not disabled. . . .
>
> (iii) At the third step, we also consider the medical severity of your impairment(s). If you have an impairment(s) that meets or equals one of our listings in [20 C.F.R. pt. 404, subpt. P, app. 1 ("listings")] . . . and meets the duration requirement, we will find that you are disabled. . . .

(iv) At the fourth step, we consider our assessment of your residual functional capacity ["RFC"] and your past relevant work. If you can still do your past relevant work, we will find that you are not disabled. . . .

(v) At the fifth and last step, we consider our assessment of your [RFC] and your age, education, and work experience to see if you can make an adjustment to other work. If you can make an adjustment to other work, we will find that you are not disabled. If you cannot make an adjustment to other work, we will find that you are disabled. . . . .

20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4).

The burden of proof and production rests with the claimant during the first four steps of the analysis. *Pass*, 65 F.3d at 1203. The burden shifts to the Commissioner at the fifth step to show that alternative work is available for the claimant in the national economy. *Id.*

In the case of multiple impairments, the Regulations require that the ALJ "consider the combined effect of all of [the claimant's] impairments without regard to whether any such impairment, if considered separately, would be of sufficient severity." 20 C.F.R. §§ 404.1523, 416.923. If a medically severe combination of impairments is found, the combined impact of those impairments will be considered throughout the disability determination process. 20 C.F.R. §§ 404.1523, 416.923.

**C.    Findings of the ALJ**

Plaintiff was 43 years old on the alleged onset date of disability and 46 years old on the date of the administrative hearing. *See* tr. 19 ¶ 7.[4] Plaintiff has past work experience as a courier and caterer's helper. Tr. 19 ¶ 6.

---

[4] For ease of reference, the court has included in citations to the ALJ's decision the numbered paragraph in which the cited material is located if text from more than one numbered paragraph appears on the page referenced.

4

Applying the five-step analysis of 20 C.F.R. §§ 404.1520(a)(4) and 416.920(a)(4), the ALJ found at step one that plaintiff had not engaged in substantial gainful activity since her alleged onset of disability. Tr. 23 ¶ 2. At step two, the ALJ found that plaintiff had the following medically determinable impairments that were severe within the meaning of the Regulations: a history of carpal tunnel syndrome; degenerative disc disease; hypertension; and depression. Tr. 12 ¶ 3; *see* 20 C.F.R. §§ 404.1520(c), 416.920(c). At step three, the ALJ found that plaintiff's impairments did not meet or medically equal any listings. Tr. 13 ¶ 4.

The ALJ then determined that plaintiff had the RFC to perform the work at the light exertional level with postural, manipulative, environmental, and mental restrictions.[5] Tr. 14 ¶ 5. Based on this RFC, the ALJ found at step four that plaintiff could not perform her past relevant work. Tr. 19 ¶ 6.

At step five, the ALJ found that there were jobs in significant numbers in the national economy that plaintiff could perform, including cashier II, office helper, and parking lot attendant. Tr. 19-20 ¶ 10. In making this determination, the ALJ adopted the opinion of a vocational expert who testified at the hearing. *Id.* The ALJ accordingly found plaintiff not disabled during the relevant period. Tr. 20 ¶ 11.

---

[5] The RFC determination reads as follows:

> The claimant can sit, stand, and walk for up to 6 hours in an 8-hour day. She requires a work environment which would permit her to alternate between sitting and standing positions every 30 minutes. She can lift 20 pounds occasionally and can lift and carry 10 pounds frequently. She is able to perform postural activities such as stooping and crouching occasionally but not frequently. She is not able to perform tasks requiring exposure to workplace hazards such as unprotected heights or dangerous machinery. She is able to use her hands for such activities as fingering and feeling frequently but not constantly. She has a decreased ability to concentrate on and attend to work tasks to the extent that she can perform only simple, routine, repetitive tasks.

Tr. 14 ¶ 5.

5

Case 5:10-cv-00134-D   Document 39   Filed 06/28/11   Page 5 of 13

## II. DISCUSSION

### A. Standard of Review

Under 42 U.S.C. § 405(g), judicial review of the final decision of the Commissioner is limited to considering whether the Commissioner's decision is supported by substantial evidence in the record and whether the appropriate legal standards were applied. *See Richardson v. Perales*, 402 U.S. 389, 390, 401 (1971); *Hays v. Sullivan*, 907 F.2d 1453, 1456 (4th Cir. 1990). Unless the court finds that the Commissioner's decision is not supported by substantial evidence or that the wrong legal standard was applied, the Commissioner's decision must be upheld. *See Smith v. Schweiker*, 795 F.2d 343, 345 (4th Cir. 1986); *Blalock v. Richardson*, 483 F.2d 773, 775 (4th Cir. 1972). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Perales*, 402 U.S. at 401 (quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)). It is more than a scintilla of evidence, but somewhat less than a preponderance. *Perales*, 402 U.S. at 401.

The court may not substitute its judgment for that of the Commissioner as long as the decision is supported by substantial evidence. *Hunter v. Sullivan*, 993 F.2d 31, 34 (4th Cir. 1992) (per curiam). In addition, the court may not make findings of fact, revisit inconsistent evidence, or make determinations of credibility. *See Craig v. Chater*, 76 F.3d 585, 589 (4th Cir. 1996); *King v. Califano*, 599 F.2d 597, 599 (4th Cir. 1979). A Commissioner's decision based on substantial evidence must be affirmed, even if the reviewing court would have reached a different conclusion. *Blalock*, 483 F.2d at 775.

Before a court can determine whether a decision is supported by substantial evidence, it must ascertain whether the Commissioner has considered all relevant evidence and sufficiently explained

6

the weight given to probative evidence. *See Sterling Smokeless Coal Co. v. Akers*, 131 F.3d 438, 439-40 (4th Cir. 1997). "Judicial review of an administrative decision is impossible without an adequate explanation of that decision by the administrator." *DeLoatche v. Heckler*, 715 F.2d 148, 150 (4th Cir. 1983).

B.  **Plaintiff's Contentions**

Plaintiff contends that the ALJ's decision should be reversed on the principal grounds that the ALJ erred by: (1) failing to evaluate plaintiff's obesity as purportedly required by Social Security Ruling 02-1p, 2000 WL 628049 (12 Sept. 2002)[6] and (2) failing to properly evaluate plaintiff's allegations of urinary incontinence. The court will address each ground advanced by plaintiff in turn.

C.  **Evaluation of Plaintiff's Obesity**

Social Security Ruling 02-1p provides in general terms that if a claimant is obese, the obesity must be considered at each step of the sequential analysis after the first step. *See* Soc. Sec. Ruling 02-1p, 2000 WL 628049, at *3. Plaintiff contends that the ALJ violated Social Security Ruling 02-1p by not evaluating or discussing plaintiff's alleged obesity at each step. The court does not agree that the ALJ erred.

Plaintiff's argument that she is obese rests primarily on her calculation of her body mass index or BMI. BMI, a measure of overweight and obesity, equals the ratio of an individual's weight in kilograms to the square of his or her height in meters, or the ratio of an individual's weight in pounds times 703 to the square of his or her height in inches. Soc. Sec. Ruling 02-1p, 2000 WL

---

[6] Rulings are interpretations of the Act by the Social Security Administration that, while lacking the force of law, are entitled to deference unless they are clearly erroneous or inconsistent with the law. *Pass*, 65 F.3d at 1204 n.3 (citing *Quang Van Han v. Bowen*, 882 F.2d 1453, 1457 (9th Cir.1989)).

628049, at *2 (citing *Clinical Guidelines on the Identification, Evaluation, and Treatment of Overweight and Obesity in Adults* (NIH Publication No. 98-4083, September 1998) ("*Clinical Guidelines*") (metric system calculation of BMI)); *Weight Control Information Network: Body Mass Index, National Institutes of Health*, http://www.win.niddk.nih.gov/publications/tools.htm#body massindex (last visited 28 June 2011) (American system calculation of BMI). Plaintiff calculates her BMI as ranging from 36 to 40, based on a height of 62½ inches and weights of between 204½ and 225 pounds from July 2006 to February 2009. (Pl.'s Mem. 6 (citing tr. 300, 338, 447, 449). These BMIs are at obesity Level II under the *Clinical Guidelines*. Soc. Sec. Ruling 02-1p, 2000 WL 628049, at *2.

But plaintiff cites to only a single diagnosis of her as obese and it was rendered, on 12 July 2006, prior to the start of the alleged onset of disability, on 25 July 2006. *See* tr. 300. Perhaps more significantly, there is no evidence that plaintiff's weight impaired her ability to perform work activities. Indeed, when explaining at the hearing why she was unable to work, plaintiff herself did not mention her weight. *See* tr. 30-31, 34-45. The courts have held that the apparent absence of consideration of obesity by the ALJ pursuant to Social Security Ruling 02-1p does not require remand when, as here, there is no indication in the record that the claimant's obesity impaired her ability to work. *See, e.g., Callicoatt v. Astrue*, 296 Fed. Appx. 700, 702 (10th Cir. 2008); *Rutherford v. Barnhart*, 399 F.3d 546, 552-53 (3d Cir. 2005); *Cranfield v. Commissioner of Social Security*, 79 Fed. Appx. 852, 857 (6th Cir. 2003).

The need for the ALJ to have considered plaintiff's purported obesity is also attenuated by his reliance on the RFC evaluations by two physicians who were aware of plaintiff's weight and height. Specifically, the ALJ stated that he gave "great weight" to the physical RFC assessments by

8

non-examining physician Robert N. Pyle, M.D. on 25 May 2007 (Tr. 343-50) and by Jack N. Drummond, M.D. on 3 October 2007 (Tr. 369-76), which determined plaintiff to have an RFC consistent with that found by the ALJ. Tr. 18. Significantly, both knew of plaintiff's height and weight in making their assessments. *See* tr. 350, 376. The courts have recognized that reliance on the opinions of physicians who knew of a claimant's height and weight can obviate the ALJ's application of the analysis under Social Security Ruling 02-1p because the ALJ is effectively considering the obesity indirectly through reliance on those opinions. *See, e.g.*, *Rutherford*, 399 F.3d at 553; *Skarbek v. Barnhart*, 390 F.3d 500, 504 (7th Cir. 2004).

The court concludes that the ALJ's handling of plaintiff's alleged obesity is supported by substantial evidence and based on the proper legal standards. Plaintiff's initial challenge to the ALJ's decision should accordingly be rejected.

### D. Evaluation of Plaintiff's Urinary Incontinence

Plaintiff has a history of urinary incontinence. At step two of the sequential analysis, the ALJ found expressly that plaintiff's urinary incontinence is not a severe impairment. Tr. 13 ¶ 3. Plaintiff contends that this finding is erroneous. She argues that the ALJ also erred by not considering it in combination with her other severe impairments. The court finds no error in the ALJ's actions.

The Regulations provide that an impairment is severe if it "significantly limits . . . [a claimant's] physical or mental ability to do basic work activities" 20 C.F.R. §§ 404.1520(c), 416.920(c). The Fourth Circuit has clarified that "an impairment can be considered as not severe only if it is a slight abnormality which has such a minimal effect on the individual that it would not be expected to interfere with the individual's ability to work, irrespective of age, education, or work

9

experience." *Evans v. Heckler*, 734 F.2d 1012, 1014 (4th Cir. 1984) (internal quotation marks omitted).

In his non-severity finding, the ALJ first noted plaintiff's history of urgency incontinence, slight stress incontinence, and bladder hyperactivity. Tr. 13 ¶ 3. He then said that she had been followed for this condition by urologist Philip M. Newhall, M.D., who prescribed Oxytrol patches and Sanctura for it. *Id.* The ALJ next found that "[t]hese medications successfully treated these conditions and [plaintiff] subsequently denied any symptoms of incontinence." *Id.* Reciting the applicable legal standard, the ALJ concluded that plaintiff's history of incontinence "does not significantly impact on her ability to perform basic work-related activities and is not a severe impairment." *Id.*; *see Gross v. Heckler*, 785 F.2d 1163, 1166 (4th Cir. 1986) ("If a symptom can be reasonably controlled by medication or treatment, it not disabling.").

The medical records in this case provide support for the finding that medication successfully treated plaintiff's incontinence. Plaintiff first saw Dr. Newhall on 18 January 2008 for her incontinence. Tr. 457. In a visit 11 days later, on 29 January 2008, Dr. Newhall gave her samples of the Oxytrol patch and Sanctura. Tr. 456. On 13 February 2008, plaintiff reported to Dr. Newhall's office in a telephone call that these medicines were "working well" and another month's worth of samples were left for her to pick up. *Id.* Samples were again provided on 10 March and 9 April 2008, but on the latter date plaintiff was told no more samples would be forthcoming. *Id.*

Plaintiff next saw Dr. Newhall on 9 February 2009. Tr. 454. He stated that plaintiff "has failed multiple anticholingerics including the Oxytrol patch and Sanctura *although they did help and she wants to be back on them*." *Id.* (emphasis added). He gave her samples and wrote her a

10

prescription. *Id.* In a visit to her family practice group about three months later, on 13 May 2009, it was noted that urinary incontinence was "Not Present." Tr. 474.

Thus, the success the Oxytrol patch and Sanctura achieved in addressing plaintiff's urinary incontinence is evidenced by her report in February 2008 that they were working; her requests in March and April 2008 for additional samples of these medications; the findings by Dr. Newhall in February 2009 that the medications had helped and that plaintiff wanted to take them again; his providing plaintiff at the same time more samples of and a prescription for the medicines; and the note in May 2009 that urinary incontinence was not then a problem. The fact that Dr. Newhall found in February 2009 that plaintiff had apparently experienced some failure with these drugs does not negate the other evidence showing them to be effective in relieving plaintiff's incontinence. Indeed, had Dr. Newhall believed these medications would be ineffective, he presumably would not have made them available to her again.[7]

The ALJ's conclusion that plaintiff's incontinence does not impact her ability to perform work-related activities is supported by this same medical evidence. This conclusion also finds support in the absence of any finding in the medical records that plaintiff's incontinence adversely affected her ability to work.

Plaintiff relies on her own hearing testimony that she still has urinary incontinence. But she nowhere asserts in the brief statement she made about the incontinency that it is disabling, either alone or in combination with other impairments. Tr. 44-45. Indeed, she did not mention the

---

[7] Plaintiff testified at the hearing that she did not have the finances to keep using the Oxytrol patch. Tr. 44-45. While disability benefits under the Act cannot be denied because the claimant is too poor to obtain helpful medical treatment, plaintiff alleges no error by the ALJ with respect to her ability to pay for treatment. *See Gordon v. Schweiker*, 725 F.2d 231, 237 (4th Cir. 1984); *accord Gamble v. Chater*, 68 F.3d 319, 320-21 (9th Cir. 1995) (collecting cases).

incontinency in response to the ALJ's questions about the conditions she claimed were disabling. Tr. 37-45. She mentioned incontinency only when the ALJ expressly asked her about it. Tr. 44-45. Thus, plaintiff's testimony can appropriately be read to support the ALJ's non-severity determination as well.

Although plaintiff contends that the ALJ failed to consider plaintiff's incontinency in combination with her other impairments, the record does not support that contention. It is clear the ALJ was well aware of plaintiff's incontinency condition. He reviewed the medical evidence relating to it in his step two analysis, as discussed, and alluded to her testimony about it in his discussion of plaintiff's RFC, prior to step four. Tr. 13 ¶ 3, 15. Moreover, for the reasons discussed, substantial evidence supports the determination that the incontinency did not meet or medically equal a listing at step three in combination with other impairments (or alone) or that the incontinency warranted particular restrictions in the RFC. The absence of findings at these steps in the analysis favorable to plaintiff therefore does not indicate failure by the ALJ to consider plaintiff's incontinency. Rather, he simply reached an assessment of plaintiff's incontinency different from the one plaintiff advocates.

The court concludes that the ALJ's handling of plaintiff's incontinency is supported by substantial evidence and based on the proper legal standards. Plaintiff's second challenge to the ALJ's decision, like the first, should accordingly be rejected.

### III. CONCLUSION

For the foregoing reasons, the court concludes that the Commissioner's final decision is supported by substantial evidence and based on the proper legal standards. IT IS THEREFORE RECOMMENDED that the Commissioner's motion for judgment on the pleadings be ALLOWED,

plaintiff's motion for judgment on the pleadings be DENIED and the final decision of the Commissioner be AFFIRMED.

The Clerk shall send copies of this Memorandum and Recommendation to counsel for the respective parties, who have 14 days to file written objections. Failure to file timely written objections bars an aggrieved party from receiving a de novo review by the District Judge on an issue covered in the Memorandum and Recommendation and, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the District Judge.

This the 28th day of June 2011.

James E. Gates
United States Magistrate Judge